# HERSCHEL O'HAIR
### v.
# THE PEOPLE.

*Clerks—Witnesses—Subpœnas—Vacation—Grand Jury.*

The clerk of the Circuit Court may, in vacation, at the request of the State's attorney, issue subpœnas for witnesses to appear before the grand jury at the ensuing term of court.

[Opinion filed November 27, 1889]

APPEAL from the Circuit Court of Edgar County; the Hon. J. F. HUGHES, Judge, presiding.

Messrs. HENRY S. TANNER and HENRY VAN SELLAR, for appellant.

Messrs. GEORGE HUNT, Attorney General, and FRANK P. HARDY, State's Attorney, for appellee.

CONGER, J.   The question presented by this record is as to the power of the clerk of the Circuit Court, in vacation, upon request of the State's attorney, to issue subpœnas for witnesses to appear before the grand jury at the ensuing term of the court.

Appellant was duly served with such a subpœna a few days before the Circuit Court convened, which he disregarded and went out of the State, where he remained until after the grand jury was discharged, when he returned to this State. The State's attorney procured from the court an attachment, upon which appellant was brought into court, and upon the foregoing facts appearing, was fined by the court $25 and costs, from which decision of the court he appeals.   No statute directly authorizes the issuing of subpœnas in such cases, nor has our attention been called to any adjudicated cases where this precise question was involved.

It is insisted by counsel for appellant that no power exists in the State's attorney to cause subpœnas to be issued prior to the organization of the grand jury; that there is no cause or action in existence authorizing the issuing of subpœnas until the grand jury has actually begun the investigation of an alleged offense.    This, in our judgment, is a misapprehension of the relative powers and duties of the State's attorney and the grand jury; for while these have been largely regulated by statute, still we must resort to the common law for the general principles governing them in cases where the statute is silent.    At common law it was the duty of the public prosecutor to prepare indictments and submit them together with the witnesses to the grand jury when organized.    The prosecution originated in the mind of the prosecutor, and the grand jury were called upon to pass upon the bill and evidence thus submitted, and either find it to be a true bill or ignore it.    In other words, the public prosecutor, whose duty it was to see that all supposed violations of law were punished, was made the instrument of preparing and bringing before the grand jury criminal charges, that they might determine whether an indictment should be found or not.    Where the supposed offender had been committed by an examining magistrate to answer to the grand jury, the prosecuting witnesses were recognized to appear and no further steps were necessary to have them present; but when there had been no preliminary hearing, and the prosecutor desired to present a bill against one whom he deemed an offender, it was his duty, prior to the organization of the grand jury, to have a bill prepared and engrossed, and have the witnesses present to support it.

Chitty, in Vol. 1, p. 316, of his Criminal Law, says:   " The grand jury being thus sworn, charged and empowered to execute the duties of their office, the bill must be preferred before them.    Previous to this, the prosecutor must cause it to be properly prepared and engrossed on parchment."

In Wheaton's Criminal Pleading and Practice, Sec. 354, it is said :   " It is essential to the validity of an indictment that it should be submitted to the grand jury by the prosecuting

O'Hair v. The People.

officer of the State." In Sec. 338 of the same work, the author says that the view as accepted in the United States Court, and in most of the States is : " That the grand jury may act upon and present such offenses as are of public notoriety and within their own knowledge, such as nuisances, seditions, etc., or such as are given them in charge by the court, or by the prosecuting attorney, but in no other cases without a previous examination of the accused before a magistrate." While the power of the grand jury is not thus limited by the practice and law of this State, and they doubtless may originate a bill of their own motion, this in no way militates against the power of the prosecuting attorney to proceed as at common law by preparing a bill prior to the meeting of the grand jury, and having his witnesses subpœnaed and present at the meeting of court. While the custom in our courts is, perhaps, general for the prosecuting attorney to prepare only such bills as are directed by the grand jury, still Sec. 17 of Chap. 78, we think, clearly recognizes the practice we have alluded to, i. e., that the bill should be prepared by, and upon the sole responsibility of the prosecutor, and submitted to the grand jury for their action thereon.

In this section, in speaking of the duties of the foreman, it is said : " and whose duty it shall be, when the grand jury, or any twelve of them, find a bill of indictment to be supported by good and sufficient evidence, to indorse thereon, ' A true bill ; ' when they do not find a bill to be supported by sufficient evidence, to indorse thereon, ' Not a true bill.' "

This common law rule of casting upon the public prosecutor the duty of preparing and bringing before the grand jury, bills for offenses against the criminal law together with the evidence to support them, is not only recognized but enforced by Sec. 5 of Chap. 14 of the Revised Statutes, which provides that the duty of the State's attorney shall be " To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in any court of record in his county, in which the people of the State or county may be concerned." It is thus by statute not only made his duty to prosecute all indictments when found, but he is to commence

them. As we understand this language, there is a criminal charge *in esse*, when the prosecuting attorney prepares a bill, sufficient at least to authorize him to have subpœnas issued for the witnesses to support it, whether before or after the grand jury is impaneled. And the universal practice having obtained in the courts of this State, so far as we are advised, of informally presenting a charge before the grand jury, without the formal preparation and presentation of a bill of indictment, we think the State's attorney, when he has reason to believe that an offense has been committed, may have subpœnas issued for the witnesses whose evidence he expects to present to the grand jury in support of the charge prior to the meeting of court.

In addition to the foregoing, it may be said that the grand jury has no independent existence, but is a part of and an adjunct to the court; that subpœnas for a witness directs him to appear, not before the grand jury, but before the court to give evidence before the grand jury, and by common law such witnesses were required to be sworn in open court and then sent before the grand jury to be examined. Bishop on Crim. Prac., Vol. 1, Sec. 868.

In the case of U. S. v. Moore, Wall. C. Ct. Rep. 28, it was held that a person charged with a crime may have compulsory process to compel the attendance of witnesses, even before indictment found, and it would seem that the people should have the same privilege. See also King v. King, 8 T. R. 585, where it is said: "A subpœna may be issued from the Crown Office requiring a witness to attend at the assizes in the country to give evidence in support of an *intended* prosecution for a felony; and this court will grant an attachment against him for not attending in obedience to the subpœna."

We find in appellant's brief a reference to Chitty's Crim. Law, Vol. 1, page 321, but we fail to see that it throws any light upon the question as to the *time* when a subpœna may issue.

Besides the foregoing reasons we think there are others of public policy tending to sustain the views herein expressed. It is the duty of the State's attorney to keep himself informed

O'Hair v. The People.

as to violations of the criminal law. Usually he has a general knowledge of most of the offenses that the grand jury ought to investigate and the witnesses by whom he expects to sustain the charge. In such cases what good reason can be given for waiting until the grand jury is impaneled before causing such witnesses to be subpœnaed It frequently happens that the grand jury after their organization must remain idle at a heavy expense to the public, waiting for these witnesses to be sent for and brought in, whereas, if attending court, as they would be under the view we take of the law, the sittings of the grand jury would be materially shortened.

Again, if all the people's witnesses known to the State's attorney were served with subpœnas prior to the term of court, it could usually be performed by the sheriff with his ordinary force of deputies; but if done after the term begins it would require a large force of special bailiffs, thus needlessly enhancing the cost. If the law were to be held in accordance with the view of appellant, it would afford witnesses, who were for any reason anxious to avoid testifying before the grand jury and who had reason to suppose they would be compelled to do so, an opportunity of going beyond the jurisdiction of the court, and so remain during the few days that the grand jury might be in session, and thus entirely defeat the course of justice, not only for one but for as many terms of court as they might desire; for it must be remembered, that according to the law, as insisted upon by appellant, a subpœna for a witness to appear before the grand jury could only be issued during the sitting of such grand jury and returnable to the same session. We apprehend no evil results will flow from the practice of having the people's witnesses subpœnaed prior to the beginning of a term of court, but are inclined to think it will tend to aid in the enforcement of the law.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*