*In re* EXHUMATION OF THE BODY OF JULIA M. BERNARDI

(No. 70-140;

Second District—March 3, 1971.

Richard C. Christian, of Waukegan, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, (John V. Virgilio, Assistant State's Attorney, of counsel,) for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Acting on the petition of the State's Attorney of Lake County alleging suspicious, obscure and mysterious circumstances as to the cause of death, the trial court ordered the exhumation of the body of Julia M. Bernardi for purposes of an autopsy. The husband of the deceased, Frank Bernardi, and her two children, Charles Bernardi and Henry Bernardi, have appeal challenging the jurisdiction of the court to issue the order.

During the early morning hours of December 14th, 1969, the Highland Park police were called to the residence of deceased and her husband. The dead body was found in the upstairs bedroom at the foot of the bed, lying on her back, clad in a nightgown. Blood was observed about the body in a pool, on the foot of the bed, on the bedroom wall, on the light switch at the door, on the doortrim, behind the headboard of the bed, on the doors leading to the closet, and on the rug at the side of the bed. The body was covered with blood and there were cuts on the hands, arms, left shoulder, chest and legs.

The family doctor, who is a distant relative of the husband of decedent, testified that he came to the home in the early morning of the 14th in response to a call from the Highland Park police. He pronounced the death at 12:35 A.M. after listening for the heartbeat, and looking for respiration and examining the pupils of the eyes. He observed the blood and considered that it was sufficient for the deceased to have bled to death, but did not seek to determine the cause of death. The funeral director testified that he removed the body at 3:00 or 3:30 A.M. and

took it to his mortuary where it was embalmed by a professional embalmer who was called in by the funeral director about 4:15 A.M. Asked, upon whose instructions he acted, the witness answered:

"Well, it's an unwritten instruction, the instructions that were given to us is to, well, the coroner just said to go ahead and embalm in the morning. This is, more or less, the way things are done in the county."

The coroner was not called by the witness until 7:30 or 8:30 in the morning and this was after the embalming had been completed. The funeral director and the embalmer each testified that, in his opinion, Mrs. Bernardi bled to death from the wounds which they observed but neither could be certain whether anything else may have been the cause of death.

The coroner testified that he had not directed the performance of an autopsy, that an inquest was pending, that he had not completed the death certificate stating the cause of death, and did not presently know the cause of death. He was asked:

"Q. Now, Coroner, in order for you to know what the cause of death to present to your Coroner's jury, is it necessary to you to have an autopsy of the body of Julia M. Bernardi?

\* \* \*

The Witness: I feel we should have an autopsy."

The coroner admitted talking to the Highland Park police some time after midnight, but the conversation was not elicited. The coroner also testified that the particular funeral director was a deputy coroner. The witness had not talked to the latter until 8:00 o'clock in the morning after the embalming had been completed.

Appellants argue principally that since there is no statute authorizing the petition by the State's Attorney, the coroner alone may seek the relief sought under Ill. Rev. Stat. 1967, ch. 31, par. 10.2 *et seq.* They urge that, alternatively, the notice given fails to invoke the jurisdiction of the court since only the husband and not the children were notified; and that, in any event, no necessity is shown for the requested exhumation since no civil or criminal proceedings are pending, no change in circumstances has been shown to have occurred since the time of burial, and the cause of death has been sufficiently shown by the testimony.

We do not agree. We have concluded that the trial court was correct in its ruling.

■■■ We agree that the coroner had the obligation to order an autopsy in this case. The burial without an autopsy and the inexplicable procedures which led to this result cannot be condoned on the record before us. The legislative intent declared in Ill. Rev. Stat. 1967, ch. 31, par. 10.2, *supra,* is that an autopsy is to be performed in every death in which

the conditions are suspicious, obscure and mysterious. And it has been recently stated in *People v. Fiddler*, 45 Ill.2d 181, 185:

"That section requires an autopsy when the cause of death cannot be definitely established otherwise. The determination of the cause of death, therefore, may be the result of a complex value judgment which the examining doctor made upon the conclusion of the autopsy."

The coroner also admitted at the time of the hearing that, whatever his prior opinion may have been, he then agreed that it was necessary to have an autopsy to determine the cause of death.

■■ While the statutes and Illinois authorities are silent as to procedure to be followed upon failure of the coroner to order an autopsy, we hold that the court may authorize an exhumation and an autopsy in a proper case, and that this is such a case.

Cases from other jurisdictions support this view. In *Dennis v. State* (Tenn. 1955), 279 S.W.2d 512, 515, 516, the court ruled that a statute which vested authority in the Attorney General to order an autopsy did not exclude the court from exercising the power on its own volition. In *Roberts v. State* (Miss. 1951), 50 So.2d 356, in the absence of any statute relative to exhumation, the court recognized that the right of relatives of a deceased to have his corpse remain undisturbed after burial must yield to the public interest when essential to the administration of justice; and approved the application of the State's Attorney for this purpose although relatives of the deceased were not made a party to or given notice of the application. See also *Commonwealth v. Grether* (Pa. 1902), 53 A. 753, 754; *Gray v. State* (Tex. 1908), 114 S.W. 635, 641.

■■ Although the cases cited involve pending criminal proceedings we perceive no valid reason for distinguishing them upon this basis. It is the duty of the State's Attorney to keep himself informed as to the violation of criminal law and this necessarily includes the investigation of facts. (See Ill. Rev. Stat. 1967, ch. 14, par. 5; *O'Hair v. The People* (1889), 32 Ill.App. 277, 280, 281; *People v. Pohl* (1964), 47 Ill.App.2d 232, 242). Clearly, an autopsy may sometimes be essential to the discovery and investigation of crime. (See 15 Am.Jur. 849.) The courts have often exerted their authority to order disinterment of a body for evidential purposes in civil cases where only property rights are involved. (See *Painter et al. v. United States Fidelity & Guaranty Co.* (Md. 1914), 91 A. 158, 160.) In *Stastny v. Tachovsky* (Neb. 1964), 132 N.W.2d 317, 324-26, the court granted disinterment as a "pure bill of discovery", merely in aid of the prosecution or defense of civil proceedings about to be brought. It should even be more evident that court should have such authority in aid of the public's interest in the discovery, investigation and prosecution of crime.

The cases cited by appellants do not support the theory that the coroner has the exclusive authority to order an autopsy under the circumstances of this case. *People v. Harvey* (1919), 286 Ill. 593 concerned an autopsy made by a doctor without authority of the coroner or the family. *Cantrall v. Great American Cas. Co.* (1930), 256 Ill.App. 47 refers to the right of an insurance company to order an autopsy. Neither case rules upon the authority of the court to order exhumation of a body and an autopsy after the failure of the coroner to perform his statutory duty.

■■ The trial court, in the exercise of its discretion, found, after careful consideration, that the exhumation would serve a reasonable purpose of disclosing the cause of death by the quality of proof which would be necessary in the event of a subsequent criminal prosecution. The record shows no abuse of the trial court's discretion and the judgment below is affirmed.

Judgment affirmed.

T. MORAN, P. J., and ABRAHAMSON, J., concur.