244 N.J. Super. 709 (1990)
583 A.2d 417
SUSAN DEVINE CAMILLI, PLAINTIFF,
v.
IMMACULATE CONCEPTION CEMETERY, DEFENDANT, THE BANK OF NEW YORK AND LAWRENCE KRIEGER, INTERVENORS/DEFENDANTS.
Superior Court of New Jersey, Chancery Division Essex County.
October 19, 1990.
*711 Hugh Francis for Plaintiff (Francis & Berry, attorneys).
Richard Aronsohn for Intervenors/Defendants (Aronsohn and Weiner, attorneys).
No appearance for Defendant Immaculate Conception Cemetery.

OPINION
KIMMELMAN, J.S.C.
Plaintiff, Susan Devine Camilli, one of nine children of the decedent, Bonaventura E. Devine, brings this action to disinter the remains of her mother who died on March 13, 1985 in New York City. The decedent was buried at the Immaculate Conception Cemetery located in Upper Montclair in Essex County.

BACKGROUND
Decedent executed a will on April 21, 1982, the probate of which is being contested by plaintiff in a proceeding presently pending in the Surrogate's Court of New York County. The basic issue pending in the Surrogate's Court is not the decedent's *712 cause of death, but whether the dementia and brain dysfunction suffered by decedent at the time of her death existed three years earlier, in 1982, to a degree sufficient to legally impair her testamentary capacity. Plaintiff, here, seeks to temporarily exhume the remains of her mother in order for a pathological examination to be made of her brain tissue. It is hoped that the examination will produce evidence of the decedent's lack of testamentary capacity at the time she executed her will. Plaintiff's contention is that by pathological examination of the decedent's brain tissue the presence of infarcts, hemorrhages and Alzheimer's disease will be discernable to an extent sufficient to prove that dementia was present at the time decedent executed her will in 1982.
This action was heard summarily due to the limited factual issues, the impending trial in the Surrogate's Court and the length of time the deceased has already been buried, all of which warranted an expeditious hearing. R.4:67.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Historically, the common law did not recognize private property rights in the buried remains of a decedent. Jurisdiction over the dead was exclusively exercised by the eccleseastical courts in England. Such jurisdiction later passed to the courts of equity so that today it is well established that equity courts have custody over dead bodies. Petition of Sheffield Farms Co., 22 N.J. 548, 126 A.2d 886 (1956).
The sanctity of the grave is conscientiously respected by the courts. By tradition therefore, the law does not favor removal or disturbance of a decedent's remains based upon a private right. Such action may be allowed however, to satisfy a paramount public right or upon an affirmative showing of good cause and urgent necessity. Perth Amboy Gas Light Company v. Kilek, 102 N.J. Eq. 588, 590, 141 A. 745 (E. & A. 1928); Fidelity Union Trust Co. v. Heller, 16 N.J. Super. 285, 290, 84 *713 A.2d 485 (Ch.Div. 1951); Guerin v. Cassidy, 38 N.J. Super. 454, 458, 119 A.2d 780 (Ch.Div. 1955).
Our Legislature has addressed those instances where courts may order disinterment to serve public purposes. Petition of Sheffield Farms Co., supra, at 554, 126 A.2d 886. Purposes specified include: first, criminal investigations, N.J.S.A. 26:6-37; second, investigations into the cause of death authorized by county medical examiners, N.J.S.A. 40A:9-50; and finally, either for the sale of lands in which bodies have been buried, N.J.S.A. 8A:8-3, or for the removal of bodies to other locations, N.J.S.A. 8A:8-4. Intended for the protection of public health, welfare and safety, these statutes provide no basis for the procurement of evidence to support or defend private claims. Petition of Sheffield Farms Co., supra, at 555, 126 A.2d 886; Watson v. Manhattan & Bronx Surface Transit Operating Authority, 487 F. Supp. 1273, 1277 (D.N.J. 1980).
As there is no public necessity for disinterment in this case, plaintiff's application for the relief sought must be considered in her capacity as a private citizen seeking to establish facts for the furtherance of a purely private right. In that context, plaintiff must make a clear and convincing showing that the brain tissue examination would, in all reasonable probability, disclose the information sought. Chief Justice Vanderbilt has characterized the burden this way:
"The law, then, will not reach into the grave in search of `the facts' except in the rarest of cases, and not even then unless it is clearly necessary and there is reasonable probability that such a violation of the sepulchre will establish what is sought."

Petition of Sheffield Farms, supra, at 556, 126 A.2d 886.
After her death, decedent's remains were promptly embalmed and she was thereafter buried in a solid bronze casket which was placed in a concrete vault consisting of five protective barriers of plastic and concrete. The grave site is on relatively high ground with little or no likelihood that the water table will rise to the level of and permeate the burial vault which would then accelerate decomposition of the body.
*714 The medical testimony presented at trial was in equipoise as to whether decedent's brain tissue, after five years, remained reasonably well preserved. It was medically asserted that there would be minimal deterioration, that the decedent's mental competency at the time of death could be determined from an examination of her brain tissue, and that an extrapolation of the degree of dementia could be made as of three years prior to death. Alzheimer's disease was described as being a slowly progressing disease of mental deterioration with varying degrees of mental impairment which may exist for several years prior to death.
Contrariwise, it was medically asserted that it is most unlikely that decedent's brain tissue remains in a state useable for any definitive diagnosis to be made. Furthermore, even if the brain tissue were found to be adequately preserved, it was said to be problematical for a medical opinion to be rendered regarding both the length of time such mental deterioration had existed, and also the degree of deterioration over the years, especially since the progression of Alzheimer's disease differs with respect to each patient.
The Court was impressed with the sincerity of the medical experts. Their qualifications and competency were beyond question. The difference in their opinions did not detract from their good faith and sincerity but only made clear the medical uncertainty inherent in the course sought to be followed.
On the basis of the foregoing, the Court finds that no clear and convincing showing has been made that a dissection and examination of decedent's brain tissue would, in all reasonable probability, establish the affirmative evidence sought for use in the New York County Surrogate's Court.
The remains of Bonaventura E. Devine will be left undisturbed.