## IN THE MATTER OF THE ESTATE OF GWENDOLYN LORETTA LEDEE, Deceased

Probate No. 52/1997

·Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

October 10, 1997

GEORGE MARSHALL MILLER, ESQ., St. Thomas, U.S.V.I., *for Petitioner*

MEYERS, *Judge*

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Petition for Letters of Administration filed by IRAN HODGE, son of, GWENDOLYN LORETTA LEDEE, the above-named decedent. Accompanying the

Petition for Letters of Administration are a Certificate of Death, a Petition for Post Mortem Examination and an Affidavit. In the Affidavit, Petitioner states that Mrs. Ledee died intestate on January 28, 1997, at home; that she was buried on February 4, 1997, without an autopsy having been performed; that she was in excellent health at the time she died; and, that he believes she died as a result of "fault or misbehavior." In the Petition for Post Mortem Examination, Petitioner asks for an Order directing the Virgin Islands Commissioner of Health to exhume the body of the decedent, and to perform a post-mortem examination. As authority for his request, Petitioner cites the following Virgin Islands statute on post-mortem examinations:

> The Commissioner [of the Health Department] shall perform or cause to be performed a post-mortem examination in any case where the cause of death cannot otherwise be definitely determined. . . No post-mortem examination shall be performed contrary to the wish of the personal representative of the deceased unless there are reasonable grounds to believe that such deceased died as a result of an illegal act or acts or from a quarantinable disease, or from suicide.

V.I. CODE ANN. tit. 19, § 865 (1953). For the reasons set forth below, the Court will deny both the Petition for Letters of Administration and the Petition for Post Mortem Examination.

### DISCUSSION

#### A. Petition for Letters of Administration/Appointment as Personal Representative

Petitioner contends he should be given priority to administer the estate of his mother. The Virgin Islands Code sets forth the priority for appointment of administrators. Administration of an estate of an intestate is ordinarily granted first to the surviving spouse, then the next of kin, or both, in the discretion of the Court. V.I. CODE ANN. tit. 15, § 236(a)(1)(1921). If these persons do not apply within thirty days of the death of the deceased, they may lose their priority status. V.I. CODE ANN. tit. 15, § 236(b)(1921). Nevertheless,

39

the Court, in its discretion, may order they be cited and allow them an additional period in which to apply or renounce their priority status. *Id.*

One or more of the principal creditors of the deceased are given secondary priority status. V.I. CODE ANN. tit. 15, § 236(a)(2)(1921). The secondary priority status holders are, however, subject to the same filing restrictions of the first priority holders. In the event the second priority holder does not apply or renounce their priority status, the Court may select someone who the Court deems is qualified and competent to administer the estate of the deceased person. V.I. CODE ANN. tit. 15, § 236(b)(1921).

Where the deceased is survived by a spouse, Section 237 of Title 15 dictates that the spouse have priority over the other persons named in Section 236, unless the spouse does not apply with the prescribed thirty day period, or he is proven unqualified or incompetent, or there has been some testamentary disposition naming another as the estate's administrator. V.I. CODE ANN. tit., 15 § 237 (1921). Section 237, in its entirety, provides as follows:

> If the deceased was a married woman, *the administration of her estate shall in all cases be granted to her husband*, if he is qualified and competent for the trust and applies therefor within thirty days from her decease, unless by force of a marriage settlement or otherwise she has made some testamentary disposition of her property which renders it necessary and proper to grant the administration to some other person.

V.I. CODE ANN. tit. 15, § 237 (1921)(emphasis added).

■ In this case, Petitioner states the deceased was married at the time of her death. The Certificate of Death supports this contention. However, Petitioner argues and the Court takes judicial notice of the fact that more than thirty days have elapsed since the date of the deceased's death on January 28, 1997. To date, the spouse of the deceased, John Ledee, has not initiated a petition for letters of administration. Thus, at this juncture, the Petitioner and John Ledee stand on equal footing to petition the Court for appointment

as administrator of the deceased's estate.[1] Their priority is superior, assuming neither is disqualified or incompetent, to the principal creditors of the estate, if there are any, and to any other person both qualified and competent to serve as an administrator.

■ Notwithstanding the fact that Petitioner may, as he has done, petition the Court for appointment as administrator, the Court notes he has not served Mr Ledee or the remaining heirs with a copy of his Petition for Letters of Administration, nor has he provided individual waivers. Therefore, it is reasonable to conclude Mr. Ledee and the remaining heirs have no knowledge of this action and, therefore, have had no opportunity to file an answer or objection. On this basis, the Court must deny the Petition for Letters of Administration of the Petitioner. Petitioner, however, will be granted an additional period in which he may serve a copy of his Petition for Letters of Administration, along with its accompanying documents, upon Mr. Ledee and the remaining heirs, or provide their individual waivers.

## B. Petition for Post Mortem Examination/Exhumation

■■ The Petition for Post Mortem Examination will be denied for several reasons. First, the cause of death of the decedent has already been determined. The Certificate of Death provides, quite clearly, that the immediate cause of death of Mrs. Ledee was "Ischemic Hypertensive Heart Disease due to, or as a consequence of, Coronary Atherosclerosis - Essential Hypertension."[2] The statute relied upon by the Petitioner only requires that a post-mortem examination be performed where "*the cause of death cannot otherwise be definitely be determined* or in cases where there are reasons to believe that death may have been due to a disease the knowledge of which gained by such post-mortem examination would be of importance in guarding the health of the community." V.I. CODE ANN. tit. 19, § 865 (1953)(emphasis added). Contrary to the edito-

---

[1] There has been no suggestion by the Petitioner that Mr. Ledee is disqualified or incompetent, only that he [Mr. Ledee] "upon information and belief, . . . is reluctant to institute any legal proceedings for the administration of the deceased's estate."

[2] The Certificate of Death was signed and certified by Francisco J. Landron, M.D., medical examiner at the Roy L. Schneider Hospital, St. Thomas, Virgin Islands, on January 29, 1997.

rial of March 19, 1997, in the Virgin Islands Daily News, entitled *V.I. Needs Its Own Medical Examiners*, there is no requirement that an autopsy be performed by a medical examiner where a person died while unattended by a physician.[3] The statute requires only that an inquiry be made to determine the actual cause of death. The nature or extent of the inquiry is left to the medical examiner's discretion. V.I. CODE ANN. tit. 3, § 115(d)(1993).

■ Second, no personal representative has been appointed to the Estate. Without appointment of a personal representative, the Court is unable to ascertain whether that person would object to the examination of Mrs. Ledee's remains. If an objection is filed by the would-be representative, no post-mortem examination may be performed unless the Petitioner is able to show *reasonable* grounds to believe the deceased died as the result of an illegal act(s) or quarantinable disease, or from suicide. V.I. CODE ANN. tit. 19, § 865 (1953). Therefore, the appointment of a representative will have to be made before the Court will entertain any further requests for a post-mortem examination.

■ Third, Petitioner does not cite the provisions of the Code which show that the Petition for Post Mortem Examination is properly before the Probate Division and not the Criminal or Civil Division of the Court, nor is the Court aware that a civil or criminal proceeding is pending.[4] If Petitioner has reasonable suspicions of illegal acts or criminal violence surrounding the death of Mrs. Ledee, they should be brought to the Commissioner of Health or Police Commissioner, who should report the case to the appropriate medical examiner. V.I. CODE ANN. tit. 3, § 115(b)(1984). The Police Commissioner, in conjunction with the Virgin Islands Department of Justice, may then initiate a criminal investigation and/or criminal proceeding. If it is the case, as the Petitioner

---

[3] A copy of the editorial was provided by the Petitioner in support of his request.

[4] In *In re Exhumation of the Body of Julia M. Bernardi*, 267 N.E. 2d 717 (Ill. App. 2d 1986), the Court affirmed the judgment of the trial court which granted the petition for exhumation. In response to the appellant's argument there was no necessity shown for the requested exhumation since no civil or criminal proceeding was pending, the Court stated it was not excluded from exercising the power on its own volition. The Court would allow disinterment for investigatory purposes. In that case, however, the petition was initiated by the State's attorney and not a private litigant.

alleges, that the appropriate authorities have been notified and have refused to take any action, it may be that Petitioner's recourse is more appropriately an action for writ of mandamus.

■ Fourth, the Court is aware the Virgin Islands Code contains no pertinent disinterment or exhumation statute. Though Petitioner has stated the proper authority under which the Commissioner of the Department of Health may be ordered to perform a post-mortem examination, he provides no similar authority for ordering an exhumation.[5] The Court has reviewed the decisions of other jurisdictions to ascertain the usual procedure and bases for permitting an exhumation. Using these cases as guidance, the Court concludes that an order permitting exhumation is not warranted in this instance.

Generally, the law does not favor the removal or disturbance of a decedent's remains upon a private right. *Camilli v. Immaculate Conception Cemetery*, 583 A.2d 417, 418 (N.J. Super. 1990) The prevailing view, when ruling in disinterment cases, is that the power to disturb the remains of one already buried shall not be exercised in the absence of a showing of "good cause and urgent necessity." *Perth Amboy Gas Light Company v. Alexander Kilek, et al.*, 141 A. 745 (Court of Errors and Appeals N.J. 1928); *See also, Esgro v. Tressa, et al.*, 492 So.2d 422 (Ct. App. Fla. 1986)(Dell, J., dissenting)(citing 25A C.J.S. *Dead Bodies* @ 4(3), at 506 (1966). Where the complainant/petitioner seeks to establish the cause of death, "good cause and necessity" are to be measured by the reasonable probability of the cause of death being capable of establishment by the exhumation and autopsy." *Id*.

In many cases, the Petitioner must show the disinterment will serve some public purpose. *Camilli*, 583 N.J. A.2d 417 at 418. The purposes specified include: criminal investigations, investigations into the cause of death by a medical examiner, or for removal of bodies to other locations — all intended for the protection of public health, welfare and safety. *Camilli*, 583 A.2d 417 at 419. One court,

---

[5]"Post-mortem" is a term generally applied to the examination or autopsy of a dead body. BLACK'S LAW DICTIONARY 1167 (6th ed. 1990). "Exhumation" or "disinterment" generally refers to the removal from the earth of something that was previously buried. *Id*. at 573. The terms are not used interchangeably.

in characterizing the burden of the Petitioner seeking to establish facts which are pertinent to a private right, was quoted as saying:

The law, then, will not reach into the grave in search of 'the facts' except in the rarest of cases, and not even then unless it is clearly necessary and there is reasonable probability that such a violation of the sepulchre will establish what is sought.

See *Camilli*, 583 A.2d 417 at 419, *quoting Petition of Sheffield Farms Co.*, 126 A.2d 886 (N.J. 1956)(Vanderbilt, J.).

In this case, Petitioner offers many allegations about the relationship between Mr. and Mrs. Ledee, and about Mr. Ledee's actions in connection with the notice of death and burial of Mrs. Ledee, Petitioner's mother. He stops short, however, of accusing Mr. Ledee of any crime. Mr. Ledee, he reports, first told Petitioner an autopsy would be done, but later said it wouldn't be done. Mr. Ledee, he reports, was frequently beaten by Mrs. Ledee; caused Mrs. Ledee's Certificate of Death to erroneously indicate she had no business interests; and did not notify Petitioner nor many of the decedent's family that she had died or invite them to the funeral. Mr. Ledee he reports, engaged in multiple extra-marital affairs and had a child with another woman; also, Mr. Ledee told Petitioner he found the decedent's body at 7:00 a.m., but the Certificate of Death states the body was found at 9:00 (no a.m. or p.m. specified.)

Petitioner does not, however, state the circumstances under which he believes the decedent died. He does not state what, if anything, a post-mortem examination would reveal. He ignores the possibility that the cause of death may be determined from the decedent's past medical history and hospital records, or from other sources. Moreover, he petitions the Court as a private citizen and not as a law enforcement officer or other government official. His statements are not collaborated by any evidence, either scientific, non-scientific, direct or circumstantial. The Court therefore concludes the Petitioner has failed to provide any sound reasons for disturbing the sanctity of his mother's grave to perform a post-mortem examination. Specifically, Petitioner has failed to establish "good cause and urgent necessity" or the reasonable probability that disinterment and a post-mortem examination will produce a

cause of death different than that already determined by the medical examiner.

For all of the foregoing reasons, Petitioner's Petition for Post Mortem Examination will also be denied. An appropriate Order will be entered.

DATED: October 10, 1997

### ORDER

In accordance with the Memorandum Opinion of even date, it is hereby

ORDERED that the Petition for Letters of Administration of IRAN HODGE, son of the above-named decedent be and the same is hereby DENIED; and it is further

ORDERED that Petitioner shall serve upon Mr. John Ledee and the remaining heirs a copy of his Petition for Letters of Administration and/or submit the waivers of the same persons within fifty (50) days of the date of this Order, failing which, this matter shall be dismissed; and it is further

ORDERED that the Petition for Post Mortem Examination of the Petitioner be and the same is hereby DENIED; and it is further

ORDERED that a copy of this Order shall be directed to George Marshall Miller, Esq.