676 A.2d 144

JOANNE WINGATE, AND SALVATORE ERIC PIRRI, A MINOR, BY HIS GUARDIAN AND NATURAL MOTHER, JOANNE WINGATE, PLAINTIFFS–RESPONDENTS, v. ESTATE OF JOHN J. RYAN AND HELEN THOMAS, ADMINISTRATRIX OF THE ESTATE OF JOHN J. RYAN, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 25, 1996—Decided May 16, 1996.

464

Before Judges SKILLMAN, PAUL G. LEVY and EICHEN.

*George G. Rosenberger, Jr.* argued the cause for appellants (*Butler, Butler & Rosenberger,* attorneys; *Mr. Rosenberger,* on the brief).

*Charles H. Jones, IV* argued the cause for respondents (*Gravino, Vittese & Jones,* attorneys; *Mr. Jones,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The issue presented by this appeal is whether *N.J.S.A.* 9:17–45(b), the section of the Parentage Act, *N.J.S.A.* 9:17–38 to –59, which requires a paternity claim to be brought within twenty-three years of a child's birth, applies to a paternity claim asserted for the purpose of establishing a right to intestate succession.

The decedent, John J. Ryan, died on the evening of February 6, 1995. The following morning, plaintiff Joanne Wingate, who was then thirty-one years old, filed this paternity action against Ryan's estate. Upon plaintiff's ex parte application on telephone notice to Ryan's sister, Helen Thomas, the court entered an order to show cause which, among other things, authorized plaintiff to make immediate arrangements "for the taking of blood ... from the body of John J. Ryan ... so genetic testing can be accomplished for [the] purpose of determining whether the decedent is plaintiff's natural father." [1] The order also directed Ryan's "attorney-in-fact

---

[1] Although plaintiff represents that Thomas did not object to this procedure, Thomas represents that the order authorizing the removal of the blood sample was entered on February 7, 1995, and that she did not receive notice of

or the executor/administratrix" and the funeral director to permit such samples to be taken before Ryan's body was embalmed. A sample of Ryan's blood was drawn pursuant to this order, and DNA testing of the blood indicated that there is a high probability Ryan was plaintiff's biological father.

Plaintiff subsequently filed an amended complaint adding as a defendant Thomas who, if plaintiff's claim were unsuccessful, would be entitled, as Ryan's only next of kin, to inherit his entire estate under the rule of intestate succession set forth in *N.J.S.A.* 3B:5–4(c). Thomas also is the current administratrix of Ryan's estate.

Defendants filed a motion to dismiss plaintiff's complaint on the ground that it is barred by the section of the Parentage Act which prohibits paternity actions brought more than five years after a child attains the age of majority (i.e., after the child reaches twenty-three years of age). *N.J.S.A.* 9:17–45(b). The trial court granted this motion but also gave plaintiff an opportunity to file an amended complaint alleging a cause of action in tort based on Ryan's failure to disclose during his lifetime that he was plaintiff's father. Plaintiff then filed a second amended complaint which added various tort claims.[2]

Thereafter, plaintiff filed a motion for reconsideration of the order dismissing her paternity claim. After extensive oral argument, the trial court reversed its earlier decision and concluded that plaintiff's paternity claim was not barred by the limitations provision of the Parentage Act. The court's essential rationale was that an action to establish paternity post-mortem is governed by the Probate Act, rather than by the Parentage Act. The court memorialized this decision by an order denying summary judg-

---

plaintiff's application until the following day, providing her no opportunity to object.

[2] This amended complaint also added plaintiff's son, Salvatore Eric Pirri, as a plaintiff. Since plaintiff's son has not played an active role in the litigation, the references to plaintiff in this opinion are solely to plaintiff Joanne Wingate.

ment "on the issue of paternity." We granted defendants' motion for leave to take an interlocutory appeal from this order and now reverse.

I

In 1983 the Legislature enacted the Parentage Act, *L.* 1983, *c.* 17, which is based on the Uniform Parentage Act proposed by the National Conference of Commissioners on Uniform State Laws. *Assembly Judiciary, Law, Public Safety and Defense Committee Statement on Senate Bill No. 888, L.* 1983, *c.* 17 (1982), *reprinted in,* comments to *N.J.S.A.* 9:17–38. One of the objectives of this legislation was "to provide a procedure to establish parentage in disputed cases." *Ibid.* Thus, the Parentage Act prescribes the parties who may bring a paternity action, *N.J.S.A.* 9:17–45(a); authorizes the appointment of a guardian *ad litem* for a child whose paternity is in dispute, *N.J.S.A.* 9:17–47; establishes procedures for requesting a trial by jury, *N.J.S.A.* 9:17–49; authorizes the court to require blood tests to be taken, and to admit evidence of blood or genetic tests, *N.J.S.A.* 9:17–48(d),(g); establishes procedures to compel testimony and evaluate the admissibility of evidence of other sexual relations, *N.J.S.A.* 9:17–50; sets forth certain forms of evidence that may be relied upon to prove or disprove paternity, *N.J.S.A.* 9:17–52, including evidence that will give rise to a presumption that a man is the natural father of a child, *N.J.S.A.* 9:17–43(a); and establishes the burdens of proof that govern such actions, *N.J.S.A.* 9:17–43(b),(d). Most significantly for the purposes of this appeal, the Parentage Act provides that "[n]o action shall be brought under this act more than 5 years after the child attains the age of majority." *N.J.S.A.* 9:17–45(b).

When the Legislature first enacted the Parentage Act, the Probate Act contained a separate provision dealing with the establishment of paternity for the purpose of intestate succession. *N.J.S.A.* 3B:5–10 then provided in pertinent part:

> If, for the purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through or from a person, a child born out of wedlock is ... a child of the father if:
>
> a. The natural parents, before or after the birth of the child, participated in a ceremonial marriage or shall have consummated a common-law marriage where the marriage is recognized as valid ... or;
>
> b. The paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof.

Thus, during the period immediately following enactment of the Parentage Act, a child claiming parentage for the purpose of intestate succession apparently could have proceeded under *N.J.S.A.* 3B:5–10 without regard for the procedures, standards or statute of limitations contained in the Parentage Act. However, except in a case where a child's natural parents had married or paternity had been established before the father's death, *N.J.S.A.* 3B:5–10 required paternity to be established by "clear and convincing proof."

In 1991, the Legislature repealed the part of the prior version of *N.J.S.A.* 3B:5–10 that had authorized a party asserting paternity for the purpose of intestate succession to proceed thereunder and enacted a new provision incorporating the procedures and standards of the Parentage Act:

> If, for the purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person, in cases not covered by *N.J.S.* 3B:5–9 [relating to children who are adopted], a person is the child of the person's parents regardless of the marital state of the persons' parents, and *the parent and child relationship may be established as provided by the "New Jersey Parentage Act," P.L.1983, c. 17* (C. 9:17–38 et seq.).
>
> [*L.*1991, *c.* 22, § 1 (emphasis added).]

Significantly, this amendment explicitly incorporated the entire Parentage Act, which includes the limitations period imposed by *N.J.S.A.* 9:7–45(b), into *N.J.S.A.* 3B:5–10 and repealed the former version of *N.J.S.A.* 3B:5–10, which contained a different standard for determining paternity for the purpose of an intestacy claim.

The evident intent of this new version of *N.J.S.A.* 3B:5–10—to require any paternity claim asserted for the purpose of establishing a right to intestate succession to be brought pursuant to the

Parentage Act—is confirmed by the Senate Judiciary Committee's accompanying statement:

> This bill is intended to resolve a potential conflict between N.J.S.A. 3B:5–10 part of New Jersey's Probate Code and the "New Jersey Parentage Act," P.L.1983, c. 17 (C. 9:17–38 et seq.) with regard to the standard for the determination of the parentage of children born out of wedlock.
>
> . . . .
>
> The Parentage Act which was enacted in 1983 sets procedures and standards for determining parentage of children born out of wedlock. *These procedures were intended to be applicable in all actions. In order to insure that a determination of parentage under the Parentage Act would also be applicable in probate matters, this bill would amend 3B:5–10 to provide that for purposes of intestate succession the parent-child relationship may be established as provided in the Parentage Act.* [*Senate Judiciary Committee Statement to Senate Bill No. 1346, L.* 1991, c. 22 (1990) (Emphasis added).]

The "procedures" applicable to a cause of action include the limitations period within which such an action must be brought. *Kaprow v. Board of Educ. of Berkeley Township,* 131 *N.J.* 572, 583, 622 *A.*2d 237 (1993).

Plaintiff nevertheless argues that the time for filing a paternity claim against an estate is governed by *N.J.S.A.* 3B:23–19, which allows any person whose name or address is unknown and who has an interest in the estate of an intestate decedent to file a claim "within a reasonable time." However, *N.J.S.A.* 3B:23–19 simply establishes a general limitations period with respect to claims against the estate of an intestate decedent by unknown heirs, while *N.J.S.A.* 9:17–45(b) is specifically applicable to proceedings brought to establish parentage. Therefore, the more recent and specific statute of limitations contained in the Parentage Act, under which a party must proceed in order to establish paternity for the purpose of asserting an intestacy claim, is controlling. *New Jersey Transit Corp. v. Borough of Somerville,* 139 *N.J.* 582, 592, 661 *A.*2d 778(1995) (noting that general limitations period "must yield" to a more specific limitations period); 3A *Sutherland on Statutory Construction,* § 70.03 (5th ed. 1992) ("When two or more statutes of limitation deal with the same subject matter, the statute which is more recent and specific will prevail over the older and more general one").

We are also unable to discern any reason why the Legislature would have wanted a longer limitations period to apply to a paternity claim asserted post mortem than would apply if the decedent were still alive. The purpose of *N.J.S.A.* 9:17–45(b), like other statutes of limitations, is to prevent the litigation of stale claims, thus providing an opposing party with a fair opportunity to defend and with repose. *Ochs v. Federal Ins. Co.*, 90 *N.J.* 108, 112, 447 *A.*2d 163 (1982). The twenty-three year limitations period provided by *N.J.S.A.* 9:17–45(b) is undoubtedly designed, like other statutes that toll limitations periods for infants, "to protect minors who presumably are not well-versed in legal, practical and business matters, from the adverse consequences of their inexperience." *Green v. Auerbach Chevrolet Corp.*, 127 *N.J.* 591, 600, 606 *A.*2d 1093 (1992) (quoting *Harrigfeld v. District Court*, 95 *Idaho* 540, 511 *P.*2d 822, 826 (1973)). Thus, *N.J.S.A.* 9:7–45(b) reflects a legislative judgment that a child should have a reasonable period after attaining majority within which to file a paternity claim. However, once that time has passed, the putative father's interest in repose and the difficulty in defending against a paternity claim first asserted many years after conception requires the action to be barred. These interests assume even greater weight after a putative father's death because the representative of an estate is generally not in as good a position to defend against a paternity claim as the decedent would have been. See *Lalli v. Lalli*, 439 *U.S.* 259, 271, 99 *S.Ct.* 518, 526, 58 *L.Ed.*2d 503, 513 (1978). In fact, if we were to accept plaintiff's argument that *N.J.S.A.* 9:17–45(b) is inapplicable to post-mortem paternity claims, it would mean that such a claim conceivably could be asserted as long as eighty years after conception if the putative father were in his teens when the child was born and did not die until he reached his nineties. Therefore, we are satisfied that the Legislature did not intend a potential paternity claim that had been extinguished during a putative father's lifetime to be revived upon his death.

Plaintiff argues that because the present version of *N.J.S.A.* 3B:5–10 states that a paternity claim for purposes of

intestate succession "may be," rather than "shall be," established under the Parentage Act, she can assert a paternity claim directly under the Probate Act without regard for the procedures and standards of the Parentage Act. However, even though "[t]he word 'may' is ordinarily permissive or directory, and the words 'must' and 'shall' are generally mandatory[, s]uch terms ... have been held to be interchangeable whenever necessary to execute the clear intent of the Legislature." *Harvey v. Essex County Bd. of Freeholders*, 30 *N.J.* 381, 391–92, 153 *A.*2d 10 (1959). Furthermore, the use of the word "may" in *N.J.S.A.* 3B:5–10 may simply reflect a legislative recognition that a claim to intestate succession could be based on an adjudication of paternity by a court of another state or by a court of this state prior to enactment of the Parentage Act. See *N.J.S.A.* 9:17–41(b) (indicating that paternity may be established not only under the Parentage Act, but also "under prior law" or "by an order of a court of competent jurisdiction in another state"). In any event, since the Probate Act no longer contains any provision for establishing paternity thereunder,[3] the conclusion is inescapable that the Legislature intended the procedures and the standards of the Parentage Act to apply to all paternity claims, including those motivated by a desire to establish a right to intestate succession.

We also reject plaintiff's argument that defendant should be equitably estopped from relying upon the limitations period set forth in *N.J.S.A.* 9:17–45(b) because Ryan failed to inform her that he was her natural father. A natural parent generally has no duty

---

[3] Plaintiff relies upon decisions of other states interpreting statutes similar to the prior version of *N.J.S.A.* 3B:5–10 as allowing a paternity claim that would be barred by the limitations period contained in the state's parentage act to be asserted under its probate act. *See, e.g., In re Estate of Greenwood*, 402 *Pa.Super.* 536, 587 *A.*2d 749, 751–54 , *appeal denied*, 529 *Pa.* 634, 600 *A.*2d 953 (1991); *C.L.W. v. M.J.*, 254 *N.W.*2d 446, 449–450 (N.D.1977); *Thompson v. Coates*, 627 *S.W.*2d 376 (Tenn.App.1981). However, since the present version of *N.J.S.A.* 3B:5–10 does not authorize a paternity claim to be brought pursuant to the Probate Act, these out-of-state cases are of no assistance in interpreting the pertinent New Jersey statutory provisions.

to disclose that parentage to the child. *Cf. Mills v. Atlantic City Dept. of Vital Statistics,* 148 *N.J.Super.* 302, 307, 372 *A.*2d 646 (Ch.Div.1977) (recognizing a natural parents' right to confidentiality after an adoption). Indeed, since plaintiff's mother was married at the time of her birth, it may have been in plaintiff's best interests to withhold this information from her. See *N.M. v. J.G.,* 255 *N.J.Super.* 423, 432–35, 605 *A.*2d 709 (App.Div.1992) (holding that the presumption that a child born during a marriage is legitimate may be defeated only if there is "no possible escape" from the conclusion that the child is illegitimate and that inquiry into the real parentage of a child may be denied if such inquiry is not in the best interests of the child).

## II

Plaintiff also argues that the twenty-three year limitations period imposed by *N.J.S.A.* 9:17–45(b) violates the Equal Protection Clause of the United States Constitution and Article I, paragraph 1 of the New Jersey Constitution.

A state legislative classification that is based on legitimacy "must be substantially related to an important governmental objective." *Clark v. Jeter,* 486 *U.S.* 456, 461, 108 *S.Ct.* 1910, 1914, 100 *L.Ed.*2d 465, 472 (1988). Applying this test, the Supreme Court has invalidated limitations provisions that required a paternity action to be brought while an illegitimate child was still an infant. See *Clark v. Jeter, supra; Pickett v. Brown,* 462 *U.S.* 1, 103 *S.Ct.* 2199, 76 *L.Ed.*2d 372 (1983); *Mills v. Habluetzel,* 456 *U.S.* 91, 102 *S.Ct.* 1549, 71 *L.Ed.*2d 770 (1982). One of the factors the Court relied upon in these cases was that the statutes at issue treated paternity claims less favorably than other actions brought by minors. For example, in *Pickett v. Brown, supra,* 462 *U.S.* at 16, 103 *S.Ct.* at 2208, 76 *L.Ed.*2d at 384–85, the Court, after noting that Tennessee tolls most actions during a child's minority, stated:

Many civil actions are fraught with problems of proof, but Tennessee has chosen to overlook these problems in most instances in favor of protecting the interests of minors. In paternity and child support actions brought on behalf of certain

illegitimate children, however, the State instead has chosen to focus on the problems of proof and to impose on these suits a short limitations period.... [T]his factor, when considered in combination with others already discussed, may lead one "to question whether the burden placed on illegitimates is designed to advance permissible state interests."

[ (quoting *Mills v. Habluetzel, supra,* 456 *U.S.* at 105, 102 *S.Ct.* at 1557, 71 *L.Ed.*2d at 781 (O'Connor, J., concurring).) ]

Unlike the statutes invalidated in *Clark, Pickett,* and *Mills, N.J.S.A.* 9:17–45(b) creates a tolling period for paternity claims during a child's minority that is comparable to the tolling period for other causes of action that may be brought by minors. See *N.J.S.A.* 2A:14–21 (providing for tolling of various limitations periods until child reaches majority, at which time applicable period begins to run). Therefore, we see no basis for concluding that *N.J.S.A.* 9:17–45(b) creates an invidious distinction between the limitations period applicable to paternity claims and those applicable to other claims that may be brought by or on behalf of minors.

Furthermore, even if *N.J.S.A.* 9:17–45(b) raised a substantial constitutional question as applied to a paternity claim against a putative father who was still alive, it clearly does not violate the Equal Protection Clause in its application to a paternity claim against a decedent's estate. In *Lalli v. Lalli, supra,* 439 *U.S.* 259, 99 *S.Ct.* 518, 58 *L.Ed.*2d 503, the Court rejected an equal protection challenge to a New York statute that allowed an illegitimate child to inherit from his father only if paternity was established by an "order of filiation" entered while the father was still alive. The Court noted that the State has a substantial interest in protecting "innocent adults and those rightfully interested in their estates from fraudulent claims of heirship and harassing litigation instituted by those seeking to establish themselves as illegitimate heirs." *Id.* at 271, 99 *S.Ct.* at 526, 58 *L.Ed.*2d at 513. The Court concluded that the New York statute was reasonably designed to serve this interest because "[f]raudulent assertions of paternity will be much less likely to succeed, or even to arise, where the proof is put before a court of law at a time when the putative father is available to respond, rather than first brought to light

when the distribution of the assets of an estate is in the offing." *Id.* at 271–72, 99 *S.Ct.* at 526, 58 *L.Ed.*2d at 513.

Plaintiff argues that the precedential authority of *Lalli* has been undermined by subsequent decisions of the Court which have recognized that DNA testing can now provide extremely reliable proof of paternity. *See, e.g., Clark v. Jeter, supra,* 486 *U.S.* at 462, 108 *S.Ct.* at 1915, 100 *L.Ed.*2d at 472; *Pickett v. Brown, supra,* 462 *U.S.* at 17–18, 103 *S.Ct.* at 2209, 76 *L.Ed.*2d at 385–86. However, whatever force this argument may have with respect to a paternity claim brought against a putative father who is still alive, it is unpersuasive with respect to a claim against a decedent's estate. Deceased persons must be buried within a day under the laws of some religions, and most bodies are either interred or cremated less than a week after death. Consequently, the only way DNA testing can be performed upon a decedent's body is for a claimant either to make an unseemly rush to the courthouse shortly after death to obtain an order for the taking of a blood sample, such as occurred in this case, or to apply at a later date for an order permitting the disinterment of the body. However, it is well established that "[t]he law ... will not reach into the grave in search of 'the facts' except in the rarest of cases, and not even then unless it is clearly necessary and there is reasonable probability that such a violation of the sepulchre will establish what is sought." *In re Sheffield Farms Co.,* 22 *N.J.* 548, 556, 126 *A.*2d 886 (1956). "By tradition, therefore, the law does not favor removal or disturbance of a decedent's remains based upon a private right." *Camilli v. Immaculate Conception Cemetery,* 244 *N.J.Super.* 709, 712, 583 *A.*2d 417 (Ch.Div.1990). Thus, even though plaintiff was able to obtain a sample of Ryan's blood under what appear to be questionable circumstances, such a sample would not be readily available in connection with the typical post-mortem paternity claim. This would mean that DNA testing would be unavailable in most cases, creating a significant danger that an estate would be unable to effectively defend against a fraudulent or unfounded paternity claim. Therefore, the Supreme

Court's more recent decisions have not cast any doubt upon the continuing vitality of *Lalli.*

Furthermore, we perceive no reason for construing the equal protection guarantee of the New Jersey Constitution more broadly than the Equal Protection Clause of the Fourteenth Amendment as interpreted in *Lalli.* Our courts employ a balancing test when conducting an equal protection analysis under the New Jersey Constitution. *Brown v. City of Newark,* 113 *N.J.* 565, 573, 552 *A.*2d 125 (1989). In striking this balance, a court considers "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." *Greenberg v. Kimmelman,* 99 *N.J.* 552, 567, 494 *A.*2d 294 (1985). "The crucial issue in each case is 'whether there is an appropriate governmental interest suitably furthered by the differential treatment' involved." *Barone v. Department of Human Servs.,* 107 *N.J.* 355, 368, 526 *A.*2d 1055 (1987) (quoting *Borough of Collingswood v. Ringgold,* 66 *N.J.* 350, 370, 331 *A.*2d 262 (1975), *appeal dismissed,* 426 *U.S.* 901, 96 *S.Ct.* 2220, 48 *L.Ed.*2d 826 (1976)). Although this test is stated differently than the multi-tiered analysis that applies under the federal Constitution (i.e. strict scrutiny, intermediate scrutiny, and rational basis), it often leads to the same result. *See Greenberg v. Kimmelman, supra,* 99 *N.J.* at 569, 494 *A.*2d 294. Indeed, the Court indicated on one occasion that its analysis under the equal protection guarantees of the New Jersey Constitution of a statute tolling the running of a limitations period would be "identical" to its analysis under the Equal Protection Clause of the Fourteenth Amendment. *Velmohos v. Maren Eng'g Corp.,* 83 *N.J.* 282, 294 n. 12, 416 *A.*2d 372 (1980), *vacated on other grounds,* 455 *U.S.* 985, 102 *S.Ct.* 1605, 71 *L.Ed.*2d 844 (1982).

Applying the balancing test required by *Brown v. City of Newark,* we are satisfied that *N.J.S.A.* 9:7–45(b) does not violate Article I, paragraph 1 of the New Jersey Constitution. Although an illegitimate child may have a substantial interest in establishing paternity, the State has a strong interest in preventing the

litigation of stale claims. In addition, putative fathers and their estates have a substantial interest in repose from "fraudulent claims of heirship and harassing litigation instituted by those seeking to establish themselves as illegitimate heirs." *Lalli v. Lalli, supra,* 439 *U.S.* at 271, 99 *S.Ct.* at 526, 58 *L.Ed.*2d at 513 (citation omitted). In our view, the twenty-three year limitations period provided under *N.J.S.A.* 9:17–45(b) strikes a reasonable balance between these competing interests. We further note that the need for repose is even greater under the present version of *N.J.S.A.* 3B:5–10 than under prior law. While the prior version of *N.J.S.A.* 3B:5–10 required a paternity claim asserted after the putative father's death to be proven by clear and convincing evidence, the Parentage Act, which *N.J.S.A.* 3B:5–10 now incorporates, only requires a claimant to prove paternity by a preponderance of the evidence. Furthermore, the claimant may rely upon a variety of presumptions to satisfy this burden. *N.J.S.A.* 9:17–43. Thus, the application of the limitations period contained in *N.J.S.A.* 9:7–45(b) to intestacy claims may be viewed as a suitable means for relieving decedents' estates of the burden of litigating stale paternity claims under the relaxed burden of proof and evidentiary rules set forth in the Parentage Act.

Therefore, we conclude that the twenty-three year limitations period set forth in *N.J.S.A.* 9:17–45(b) does not violate the equal protection guarantees of the United States and New Jersey constitutions.

Accordingly, the order denying defendant's motion to dismiss plaintiff's paternity claim as untimely is reversed.