# Illinois Official Reports

## Appellate Court

---

### *In re Estate of Jagodowski*, 2017 IL App (2d) 160723

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF KRZYSZTOF JAGODOWSKI, a/k/a Christopher Jagodowski, Deceased (Joanna Ungstad, Petitioner and Counterrespondent-Appellee, v. Boguslaw Malara, Respondent and Counterpetitioner-Appellant). |
| District & No. | Second District<br>Docket No. 2-16-0723 |
| Filed | August 28, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 16-P-100; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | First certified question answered; second certified question not answered; order reversed and cause remanded. |
| Counsel on Appeal | David T. Arena, Peter M. Follenweider, Chester A. Lizak, and Jeffrey S. McDonald, of DiMonte & Lizak, LLC, of Park Ridge, for appellant.<br><br>Vincent P. Formica, Jr., and Lucas M. Fuksa, of Fuksa Khorshid, LLC, of Chicago, for appellee. |

JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal presents two certified questions that arise from a dispute over the estate of Krzysztof Jagodowski, a/k/a Christopher Jagodowski, who died intestate on January 23, 2016. Boguslaw Malara, the administrator of Christopher's estate, moved to establish heirship by arguing that Joanna Ungstad was not Christopher's biological daughter. The trial court denied his motion, finding that Boguslaw lacked standing to challenge Christopher's parentage and that the challenge was otherwise time-barred.

¶ 2    Thereafter, the trial court certified two questions pursuant to Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016). The first question asks us to determine whether the limitations periods under the Illinois Parentage Act of 2015 (Parentage Act) (750 ILCS 46/205 (West Supp. 2015))[1] apply in a probate proceeding, and the second asks whether the administrator of an estate has standing to maintain a proceeding to adjudicate the nonexistence of a parent-child relationship. We answer the first question in the affirmative, concluding that the Parentage Act applies to a parentage challenge in a probate proceeding. We decline to answer the second question and instead reverse the trial court orders and remand for further proceedings consistent with this opinion.

¶ 3                          I. BACKGROUND

¶ 4    The pertinent facts begin in May 1982, when Christopher married Ilona Padolski. While Christopher and Ilona were married, Ilona gave birth to Joanna Ungstad (*née* Jagodowski) on July 30, 1984. The couple divorced in 1991, and Joanna moved with Ilona to Canada, where they lived with Ilona's new husband. Christopher consistently paid his obligated child support for Joanna, until she turned 18.

¶ 5    On January 23, 2016, Christopher died intestate. Thereafter, Stanislowa Jagadowski, Christopher's mother, and Barbara Jagadowski, his sister, moved for a temporary injunction to prevent the cremation of Christopher's body, in order to obtain samples for genetic testing. The trial court granted the temporary injunction, and samples were retained.

¶ 6    On February 1, 2016, Joanna filed a petition for letters of administration, requesting to serve as independent administrator of Christopher's estate. On February 10, 2016, Boguslaw, Christopher's cousin, filed a counterpetition for letters of administration. Around March 1, 2016, Boguslaw moved to dismiss Joanna's petition on the basis that Joanna was not a United States resident. He argued that she was a Canadian resident and therefore did not meet the requirements of section 9-1 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/9-1 (West

---

[1]We cite the version of the Parentage Act effective from January 1, 2016, to December 31, 2016. However, unless noted, the relevant portions of the Parentage Act that we cite remain the same or substantially the same in the amended version effective January 1, 2017. See Pub. Act 99-769, § 5 (eff. Jan. 1, 2017) (amending various sections of the Parentage Act).

2016)) to serve as administrator of Christopher's estate. On April 26, 2016, the court granted Boguslaw's motion to dismiss Joanna's petition and it appointed Boguslaw as the supervised administrator of Christopher's estate.

¶ 7        On March 1, 2016, Boguslaw filed a motion to establish heirship, arguing that Joanna was not Christopher's biological or adopted daughter and that Christopher's heirs were Stanislowa and Barbara. He attached an affidavit of heirship, stating the same, and the motion requested DNA testing. Boguslaw acknowledged that Joanna was born to Ilona while she was married to Christopher, but he contended that Joanna had "much darker skin" and "Asian facial features." He also alleged that Stanislowa had heard from a third party that Joanna was not Christopher's biological child. Joanna responded that Boguslaw lacked standing to challenge the existence of a parent-child relationship and that, nevertheless, any such challenge was time-barred by the Parentage Act.

¶ 8        On June 30, 2016, the trial court heard oral argument on the motion to establish heirship. After argument, the court asked whether the parties, regardless of its ruling, would be willing to submit Rule 308 certified questions to the appellate court. The court then denied Boguslaw's motion to establish heirship, including his request for DNA testing. In reaching its decision, the court considered that Joanna's birth certificate listed Christopher as her father, that Joanna was now 31 years old, that Christopher had paid all due child support, and that there was at least "some indicia of parenthood" in the record. The court explicitly denied Boguslaw's motion "on the basis of both standing and the statute of limitations." The court thereafter entered a written order denying the motion for the reasons stated on the record.

¶ 9        On August 3, 2016, the trial court entered an order certifying two questions to the appellate court. The questions were:

"1. Whether the statute of limitations period(s) prescribed in the Illinois Parentage Act of 2015, 750 ILCS 46/101 *et seq.* applies to the adjudication of parentage in a probate proceeding to determine heirship pursuant to the Illinois Probate Act, 755 ILCS 5/1-1 *et seq.*, or whether in such a proceeding the statute of limitations under the Illinois Probate Act, 755 ILCS 5/1-1 *et seq.* applies? and

2. Does the court appointed administrator of a probate estate who is not the child, a parent or a person presumed to be a parent have standing when pursuing a determination of heirship to petition the court to adjudicate the non-existence of a parent-child relationship between decedent and decedent's purported heir including using the mechanism of DNA testing found in the Illinois Parentage Act of 2015, 750 ILCS 46/101 *et seq.*?"

¶ 10        Boguslaw timely petitioned for leave to appeal pursuant to Rule 308, and we granted his petition.

¶ 11                                        II. ANALYSIS

¶ 12        Our review of certified questions on permissive interlocutory appeal is governed by Illinois Supreme Court Rule 308 (eff. Jan. 1, 2016). See *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57 (2007). Certified questions under Rule 308 present issues of law, and therefore our review is *de novo*. *Dale v. South Central Illinois Mass Transit District*, 2014 IL App (5th) 130361, ¶ 11.

¶ 13    Generally, an appeal pursuant to Rule 308 is limited to the questions identified by the trial court, and we will not expand the appeal to encompass other matters that could have been included. *Blackshare v. Banfield*, 367 Ill. App. 3d 1077, 1079 (2006). However, in the interests of judicial economy and reaching an equitable result, our review is not confined to the limits of the certified questions. *Cincinnati Insurance Co. v. Chapman*, 2012 IL App (1st) 111792, ¶ 24 (where the most appropriate answer to the certified question was "maybe," due to the question's inadequate wording, it was appropriate to review the record and the underlying order); *Stonecrafters, Inc. v. Wholesale Life Insurance Brokerage, Inc.*, 393 Ill. App. 3d 951, 957 (2009) (when necessary, we may go beyond the certified questions to consider the substantive issues and the appropriateness of the order giving rise to the appeal). In this case, we believe that it is necessary to consider the appropriateness of the underlying order denying the motion to determine heirship, in the interests of judicial economy and reaching an equitable result. In reviewing the underlying order, we remain consistent with the practice of this court. See *Fosse v. Pensabene*, 362 Ill. App. 3d 172, 190 (2005) (declining to answer one of the certified questions and reversing the underlying order); *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 998-99 (2004).

¶ 14    Finally, our answers to the certified questions require statutory construction. "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature," and the best indicator of legislative intent is the language in the statute itself, accorded its plain and ordinary meaning. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6 (2009). We address each question in turn.

¶ 15                    A. First Question: Limitations Periods

¶ 16    Before addressing the parties' arguments, we begin by reviewing the relevant provisions of the Parentage Act. Section 204 of the Parentage Act provides for various presumptions of parentage, including that a person is a presumed parent of a child if that person and the mother of the child were married when the child was born. 750 ILCS 46/204(a)(1) (West Supp. 2015). Here, the parties do not dispute that Joanna was born while Christopher was married to Ilona and that therefore Christopher is her presumed father.

¶ 17    A petitioner may challenge a presumption of parentage pursuant to section 205 of the Parentage Act, subject to specified limitations. Section 205(a) permits the child, the mother, or a presumed parent as established under section 204 to pursue a proceeding to declare the nonexistence of a parent-child relationship. 750 ILCS 46/205(a) (West Supp. 2015). Under section 205(b), that proceeding must be brought no later than two years after the petitioner knew or should have known the relevant facts, although the two-year limitations period shall not extend beyond the date that the child reaches age 18. 750 ILCS 46/205(b) (West Supp. 2015).

¶ 18    While sections 204 and 205 provide presumptions of parentage and limitations on challenges to an existing parent-child relationship, section 601 of the Parentage Act authorizes a proceeding to adjudicate parentage of a child generally. 750 ILCS 46/601 (West Supp. 2015). Section 602 delineates who may petition to adjudicate parentage, and, unlike one under section 205, a section 601 proceeding may be brought by parties other than the mother, the child, or the presumed or adjudicated father. 750 ILCS 46/602 (West Supp. 2015). Specifically, section 602 provides that, subject to the limitations of sections 607, 608, and 609 of the Parentage Act, the following may maintain a proceeding to adjudicate parentage:

- 4 -

"(a) the child;

(b) the mother of the child;

(c) a pregnant woman;

(d) a man presumed or alleging himself to be the parent of the child;

(e) a woman presumed or alleging herself to be the parent of the child;

(f) the support-enforcement agency or other governmental agency authorized by other law;

(g) any person or public agency that has custody of, is providing financial support to, or has provided financial support to the child;

(h) the Department of Healthcare and Family Services ***;

(i) an authorized adoption agency or licensed child-placing agency;

(j) *a representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, incapacitated, or a minor*; or

(k) an intended parent ***." (Emphasis added.) *Id.*

¶ 19    A proceeding to adjudicate parentage under section 602 is limited depending upon whether the child has a presumed parent. Under section 607, a child without a presumed, acknowledged, or adjudicated parent may commence a proceeding at any time, even after becoming an adult. 750 ILCS 46/607 (West Supp. 2015). If the child has a presumed father, however, a proceeding to declare the nonexistence of the parent-child relationship between the child and the presumed father may be maintained at any time, but only by a person described under section 204(a)(1)-(4) of the Parentage Act (750 ILCS 46/204(a)(1)-(4) (West Supp. 2015)) and only if the court determines that the presumed father and the mother of the child neither cohabitated nor engaged in sexual intercourse with each other during the probable time of conception. 750 ILCS 46/608(b) (West Supp. 2015).

¶ 20    With these provisions in mind, we turn to the parties' arguments. Boguslaw contends that the Probate Act applies to a motion to determine heirship and that any limitations period under the Parentage Act is inapplicable to such a motion. He cites *In re Estate of Poole*, 207 Ill. 2d 393 (2003), to support his position. He contends that the *Poole* court "really meant that DNA testing under the Parentage Act, but not the strict application of the Parentage Act, should be applied to probate issues to determine heirship." At the same time, Boguslaw emphasizes that heirship was not an issue before the *Poole* court. Rather, he argues, the *Poole* decision was limited to how the mechanisms of the Parentage Act help determine preference for letters of administration. He urges us to follow *Poole* in limiting the application of the Parentage Act to simply allow DNA testing to determine whether Joanna is Christopher's biological daughter, "without applying the Parentage Act *per se*," that is, without applying its limitations periods.

¶ 21    Boguslaw continues that heirship can be conclusively decided only after the death of a decedent. He argues that, if the Parentage Act limitations periods were applied here, then heirship would have been "conclusively determined at the point in time where Joanna became 21 years old"—a whole decade before Christopher's death. He argues that this would be an absurd result, inconsistent with legislative intent. Boguslaw directs us to section 205 of the Parentage Act, which provides that an action to declare the nonexistence of a parent-child relationship must be brought within two years of when the petitioner "knew or should have known of the relevant facts." 750 ILCS 46/205(b) (West Supp. 2015). He argues that the Illinois public policy behind the Parentage Act—to protect every minor child's right to

physical, emotional, and financial support—demonstrates that section 205 was not intended to be applied to a probate matter. He concludes that, because this action does not concern child support, the Parentage Act is inapplicable. Moreover, Boguslaw argues that a contrary interpretation, applying any of the Parentage Act's limitations periods, would impermissibly negate parts of the Probate Act. In particular, he warns that strict application of the Parentage Act would nullify the limitations period under section 5-3(a) of the Probate Act.[2]

¶ 22    Asserting that this is a matter of first impression in Illinois, Boguslaw cites decisions from other jurisdictions for guidance to argue that the Parentage Act's limitations periods should not apply to a determination of heirship. In particular, he directs us to New Jersey, Missouri, and Colorado. In *Wingate v. Estate of Ryan*, 693 A.2d 457, 459 (N.J. 1997), the New Jersey Supreme Court addressed the interplay between the New Jersey Parentage Act (N.J. Stat. Ann. § 9:17-38 *et seq.* (West 1994)) and the Act for the Administration of Estates—Decedents and Others (New Jersey Probate Code) (N.J. Stat. Ann. § 3B:1-1 *et seq.* (West 1994)). There, Wingate sought to establish that the deceased, Ryan, was her father, after the 23-year limitations period to establish parentage under the New Jersey Parentage Act had passed. *Wingate*, 693 A.2d at 458. For most of her life, Wingate believed that she was the biological child of another man, but 10 days before Ryan's death, her mother told her that Ryan was her biological father. *Id.* at 459. The trial court denied the estate's motion to dismiss based on the limitations period, but the appellate court reversed. *Id.* at 458-59.

¶ 23    The New Jersey Supreme Court reversed the appellate court, holding that the limitations period under the New Jersey Parentage Act did not apply to claims filed under the New Jersey Probate Code. *Id.* at 459. The court explained that the Parentage Act and the Probate Code served different purposes and that these different purposes helped explain why the legislature provided a separate limitations period for each. *Id.* at 463. Importantly, the Parentage Act provided that it did not affect the time within which an heirship claim must be filed. *Id.* at 464.

¶ 24    Boguslaw argues that the facts here are similar to the facts of *Wingate*, in that he is seeking to establish parentage (or lack thereof), outside the limitations periods of the Parentage Act, for purposes of determining heirship. He also contends that the public policy behind the Parentage Act is similar to that behind the New Jersey Parentage Act, because both are concerned primarily with child support, which is not at issue during probate.

¶ 25    Boguslaw next cites *In re Nocita*, 914 S.W.2d 358 (Mo. 1996) (*en banc*), asserting that its holding is consistent with *Wingate*. In *Nocita*, Anthony Mahon sought to establish that he was Carl Nocita's sole child after Carl died intestate. *Id.* at 358. Carl's family asserted that, in order for Anthony to inherit as an illegitimate child, he was required to establish paternity within the limitations period of the Missouri Parentage Act (Mo. Rev. Stat. § 210.828 (1990)) before he turned 18 years old. *Nocita*, 914 S.W.2d at 358. He had not done so, and therefore, they argued, he could not inherit. Anthony countered that the limitations period of the Missouri Probate Code (Mo. Rev. Stat. § 474.010 *et seq.* (1990)) controlled and that it allowed an action to establish parentage within six months of the first publication of the letters of administration for

---

[2]Section 5-3(a) provides:

"The court may ascertain and declare the heirship of any decedent to be entered of record in the court at any time during the administration of the estate without further notice or, if there is no grant of administration, upon such notice and in such manner as the court directs." 755 ILCS 5/5-3(a) (West 2016).

the estate. *Nocita*, 914 S.W.2d at 358-59. The trial court found that the Parentage Act did not bar Anthony from seeking to establish paternity. *Id.* at 358. The supreme court affirmed, reasoning that the legislature passed the Parentage Act without conforming it to the preexisting Missouri Probate Code and that therefore it did not intend to make the Parentage Act the exclusive means to establish paternity for purposes of probate. *Id.* at 359. The supreme court relied on the plain language of the Probate Code, which provided that Anthony had six months from the start of probate to establish paternity for purposes of intestate succession. *Id.*

¶ 26    Finally, Boguslaw directs us to *Lewis v. Schneider*, 890 P.2d 148 (Colo. App. 1994), arguing again that the similar fact pattern demonstrates that the Parentage Act's limitations periods should not control in this case. In *Lewis*, Charles Schneider died intestate. *Id.* at 149. Before Charles's death, he acknowledged that he was Connie Lewis's biological father. Connie's parents, Vincent and Dorothy Macrander, also acknowledged his paternity, and DNA tests performed after his death confirmed it. *Id.* Connie filed a petition to declare herself Charles's heir, and the trial court held that she was entitled to inherit as an heir. *Id.* On appeal, the estate argued that the trial court erred in allowing Connie to establish paternity outside the limitations period of Colorado's Parentage Act (Colo. Rev. Stat. § 19-4-107(1)(b) (1993)). *Lewis*, 890 P.2d at 150. In particular, the estate argued that Connie had been required to demonstrate, within five years of being born, that Vincent was not her biological father. The appellate court was unpersuaded, reasoning in pertinent part that the specific provision of the Colorado Probate Code controlled, not the more general provision of the Parentage Act. *Id.* at 150-51. In particular, section 15-11-109 of the Probate Code allowed a child born out of wedlock to establish paternity after the death of the father. *Id.* at 151.

¶ 27    Joanna responds that the Parentage Act is the appropriate statutory mechanism for determining parentage, including during probate. In *Poole*, the Illinois Supreme Court looked to the Parentage Act to establish whether there was a parent-child relationship between the petitioner and a stillborn child, for purposes of determining whether the petitioner had priority under the Probate Act to serve as administrator of the child's estate. *Poole*, 207 Ill. 2d at 404. The supreme court reasoned that the Probate Act did not define the term "parents" or provide a way to determine who was a legal parent of a child, and it therefore turned to the Parentage Act for guidance. *Id.* at 403. It explained that the Parentage Act applied to "any civil action *** if parentage is at issue." *Id.* Joanna contends that Boguslaw's interpretation—that *Poole* authorized only DNA testing under the Parentage Act in probate proceedings but excluded its other provisions, such as limitations periods—is unfounded. The *Poole* court applied the Parentage Act to determine the parent-child relationship, and the right to inherit under the Probate Act derived from that relationship.

¶ 28    Joanna continues that, pursuant to section 205(b) of the Parentage Act, Boguslaw is time-barred from challenging her parent-child relationship with Christopher. Christopher was her presumed father, and therefore, pursuant to section 205(b), Boguslaw had two years from the time he knew or should have known the relevant facts to initiate an action to declare the nonexistence of the parent-child relationship.[3] Section 205(b) also imposed an absolute time bar to such an action after Joanna reached age 18. Joanna stresses that Christopher never

---

[3]Joanna acknowledges a "minor exception outlined in 750 ILCS [46/]608(b)" to section 205(b)'s limitations period.

sought to adjudicate paternity during his lifetime, which speaks to his intent and to his relationship with her.

¶ 29    Joanna also disagrees that applying the Parentage Act would lead to the absurd result of determining Christopher's heirs before his death. Rather, she argues, a living person has no heirs and Joanna's status as Christopher's daughter did not confer her status as his heir until after his death. Had she predeceased Christopher, she would not have been his heir, and any share of the estate she would have been entitled to would have flowed to Christopher's living heirs according to the Probate Act. Any concern that a child would be unable to assert her status as an heir is unfounded, because section 607 of the Parentage Act allows a child to adjudicate parentage without any time limitation. Further, Joanna argues that any limitations period arising under the Parentage Act does not nullify section 5-3(a) of the Probate Act. Section 5-3(a) is not a statute of limitations; it merely allows a court to declare heirship at any point in the administration of an estate. See 755 ILCS 5/5-3(a) (West 2016).

¶ 30    Turning to Boguslaw's foreign case law, Joanna argues that it does not support a holding that the Parentage Act's limitations periods are inapplicable here. Rather, those cases addressed attempts to establish parentage during probate, whereas here Boguslaw attempted to *disestablish* parentage. Addressing the holding in *Wingate*, Joanna directs us to *In re Trust Created by Agreement Dated December 20, 1961*, 765 A.2d 746 (N.J. 2001). There, the New Jersey Supreme Court clarified that *Wingate*, along with the New Jersey Parentage Act and Probate Code, "apply principally to parties seeking to establish or confirm their parentage, as opposed to those seeking to defeat the established parentage of others." *Id.* at 755. The court explicitly rejected the proposition that, because a potential heir could contest a will or trust during a probate proceeding, a third party could collaterally attack a parentage adjudication made prior to probate. *Id.* at 754. Joanna argues that *Lewis* and *Nocita* likewise fall into this distinguishable fact pattern of a third party attacking parentage, as opposed to a potential heir seeking to establish parentage.

¶ 31    Joanna instead directs us to case law from Nevada and Minnesota, where those states applied their respective parentage acts in probate proceedings. In *In re Estate of Murray*, 344 P.3d 419, 420 (Nev. 2015), Robert Murray died intestate. Robert was survived by two siblings and by Joyce Slaughter, who sought to establish that she was his daughter. *Id.* When Joyce was born, Robert was 17 years old and he was unable to marry Joyce's mother without parental consent. He did not marry her mother until he was 19. *Id.* Robert never formally established paternity of Joyce nor challenged his status as her father. *Id.* Robert's obituary identified Joyce as his sole child, and she arranged and paid for his funeral services. *Id.* A few months after Robert's death, his siblings filed a petition for appointment as special administrators of his estate. *Id.* Their petition identified Joyce as Robert's "stepdaughter." *Id.* Joyce challenged their appointments, and the trial court found that she was entitled to administer Robert's estate. *Id.* at 421. On appeal, the Nevada Supreme Court affirmed, holding that the siblings lacked standing and were time-barred from challenging Joyce's parentage under the Nevada Parentage Act. *Id.* at 424. It reasoned that the legislature, by failing to adopt any independent means for determining parentage for inheritance purposes, intended the Nevada Parentage Act to apply. *Id.* at 422-23. Joanna argues that *Murray* is analogous to this case because it addressed a similar factual scenario under a similar statutory framework.

¶ 32    Moving to Minnesota, Joanna cites *In re Estate of Jotham*, 722 N.W.2d 447 (Minn. 2006), arguing that its facts are "strikingly similar to the present case." In *Jotham*, the decedent,

Leonard Jotham, married Margaret Jotham in 1942. *Id.* at 449. Margaret had a child, Diann Nelson, during the marriage. Shortly thereafter, Leonard divorced Margaret, and 279 days after the judgment of divorce, Margaret gave birth to Sandra Barnett. *Id.* Leonard died intestate, and Margaret sought appointment as the administrator of his estate, designating Diann and Sandra as his daughters. *Id.* Diann objected to the petition, arguing that Leonard was not Sandra's father. *Id.* The trial court concluded that Leonard was Sandra's father under the Minnesota Parentage Act (Minn. Stat. § 257.51 *et seq.* (2004)) because she was born within 280 days of his divorce. *Jotham*, 722 N.W.2d at 450. The appellate court reversed, holding that Diann could offer evidence to rebut the presumption of parentage, because the action was a probate proceeding and therefore the limitations period of the Minnesota Parentage Act did not apply. *Id.*

¶ 33    The Minnesota Supreme Court reversed the appellate court, holding that the limitations period of the Minnesota Parentage Act applied in the probate proceeding. *Id.* at 453-54. Section 257.55 of the Minnesota Parentage Act (Minn. Stat. § 257.55 (2004)) created a presumption that a man was the biological father of a child born to the man's former wife within 280 days of the end of the marriage. The presumption could be challenged under the Minnesota Parentage Act, but only within a specified period. *Jotham*, 722 N.W.2d at 451. The court clarified:

> "When a party benefits from a Parentage Act presumption of paternity and relies on that presumption to establish paternity in a probate proceeding, the party has chosen to establish paternity under the Parentage Act, as expressly authorized by the Probate Code. [Citation.] In such a situation, the provisions of the Parentage Act must apply in their entirety." *Id.* at 452.

Sandra benefited from a paternity presumption, and the court therefore held that, for intestacy purposes, paternity had to be determined in accordance with the Minnesota Parentage Act. *Id.* at 454.

¶ 34    We agree with Joanna and answer the first certified question as follows: The Parentage Act's limitations on declaring the nonexistence of a parent-child relationship[4] apply in a probate proceeding to determine heirship where a party is seeking to declare the nonexistence of the decedent's parent-child relationship with his presumed child.

¶ 35    We first note that the Probate Act does not speak to the determination of parentage. Rather, section 5-3(a) of the Probate Act provides that trial courts may ascertain and declare heirship "of any decedent *** at any time during the administration of the estate." 755 ILCS 5/5-3(a) (West 2016). Contrary to Boguslaw's argument, this general power to ascertain heirship does not impose a limitations period on determining parentage in a probate proceeding, and our answer does not nullify section 5-3(a). The rest of the section is concerned with how, not when, to establish heirship (see 755 ILCS 5/5-3(b) (West 2016) (heirship may be ascertained from affidavit, evidence in narrative form, or questions and answers reduced to writing)).

¶ 36    In order to determine parentage under the Probate Act, our supreme court has looked to the Parentage Act for guidance. See *Poole*, 207 Ill. 2d at 403. In *Poole*, petitioner Randy Poole had been living with Christina Clausen. *Id.* at 394. Randy and Christina were in a conjugal relationship, but they never married. *Id.* at 395. Christina became pregnant during their relationship, and, about eight months into her pregnancy, she died in an automobile accident.

---

[4]See 750 ILCS 46/205 (West Supp. 2015).

*Id.* Doctors performed a Caesarian section to deliver the stillborn fetus, Madison Poole, and the parties did not dispute that Madison survived Christina. *Id.*

¶ 37    Respondent Debra Clausen, Christina's mother, filed a petition for letters of administration for Madison's estate, and the trial court granted her petition. *Id.* The court identified Madison's heirs as her maternal grandparents, which included Debra. Randy thereafter filed a petition to revoke the letters of administration, asserting that he was Madison's biological father and, as such, was entitled to priority in the granting of letters of administration. *Id.* at 396. The court dismissed Randy's petition, based on a lack of standing. *Id.* at 397. The appellate court reversed, holding that Randy had standing. *Id.* at 398.

¶ 38    The supreme court affirmed the appellate court, holding that Randy was entitled to a hearing to establish parentage of Madison. *Id.* at 407. The question before the court was who had legal precedence to act as the administrator of Madison's estate. To answer that question, the court began by citing section 9-3 of the Probate Act, which listed persons entitled to preference in obtaining letters. *Id.* at 401. Madison had no surviving spouse or descendants, and therefore under the Probate Act her "parents" were next in line to act as administrators. *Id.* However, the Probate Act did not define the term "parents." *Id.* at 403. In order to define the term "parents," the court turned to the Parentage Act, believing "that the question regarding the order of preference for the administration of this estate presents [parentage] as an issue *** and that the Parentage Act is the statutory mechanism that serves to legally establish parent and child relationships in Illinois." *Id.* at 404. It was therefore necessary to remand for a hearing in which Randy could petition to establish his paternity of Madison pursuant to the Parentage Act. *Id.* at 406. At the hearing, Randy would be free to adduce evidence to establish paternity, and DNA testing would be available since tissue samples were preserved in the case. *Id.* at 407. If he were able to establish paternity, he would take precedence over Debra to administer Madison's estate. *Id.*

¶ 39    We believe that *Poole* clearly establishes that, when a parentage issue arises in a probate proceeding, we may look to the Parentage Act for guidance. Here, parentage is the primary issue in the first certified question, specifically, what limitations periods apply in a challenge to presumed parentage during a probate proceeding. As preference for letters of administration was the context for the parentage issue in *Poole*, heirship is the context for the parentage issue here. Also as in *Poole*, the Probate Act's rules for descent and distribution do not define the parent-child relationship or provide a mechanism for challenging it.

¶ 40    We note that our reading of *Poole* is consonant with the language of the Parentage Act itself. The Parentage Act applies "to determination of parentage in this State" (750 ILCS 46/104(a) (West Supp. 2015)), and a "parent-child relationship established under this Act applies for all purposes, except as otherwise specifically provide by other law of this State" (750 ILCS 46/203 (West Supp. 2015)). The Parentage Act specifically provides that, "[i]n a civil action not brought under this Act, the provisions of this Act shall apply if parentage is at issue." 750 ILCS 46/603 (West Supp. 2015).

¶ 41    We are not persuaded by Boguslaw's foreign case law. Joanna is correct that *Wingate*, *Nocita*, and *Lewis* are distinguishable. Each of those cases addressed a situation where the child sought to establish paternity, whereas here the administrator of the estate seeks to disestablish paternity. The New Jersey Supreme Court clarified that its holding in *Wingate* applied "principally to parties seeking to establish parentage or confirm their parentage, as opposed to those seeking to defeat the established parentage of others." *In re Trust Created by*

*Agreement Dated December 20, 1961*, 765 A.2d at 755. Moreover, Missouri's and Colorado's respective probate codes had applicable provisions. In *Nocita*, the Missouri Probate Code specifically permitted a claimant six months from the start of probate to establish paternity. *Nocita*, 914 S.W.2d at 359. And in *Lewis*, the court found that the more specific provision of the Colorado Probate Code, which allowed a child born out of wedlock to establish paternity after the father's death, controlled over the more general limitations of the Colorado Parentage Act. *Lewis*, 890 P.2d at 150-51.

¶ 42    On the other hand, the question before us is similar to those posed in *Murray* and *Jotham*. In *Murray*, the Nevada Supreme Court addressed the decedent's siblings' challenge during probate to the paternity of the decedent's daughter. *Murray*, 344 P.3d at 420. The Nevada Probate Code did not provide guidance on who was a "child" for purposes of intestate succession, and therefore the court turned to the Nevada Parentage Act, which "applied to determine legal parentage." (Internal quotation marks omitted.) *Id.* at 421. The Nevada Supreme Court reasoned that the legislature, by failing to provide any independent means of determining parentage for inheritance purposes, intended Nevada's Parentage Act to apply in probate proceedings. *Id.* at 422. The court was "not persuaded that the manner in which a child's paternity is determined should change simply because a party is involved in a probate dispute instead of a custody or support dispute." *Id.* Similarly, here, Boguslaw is challenging the decedent's paternity of his daughter during a probate proceeding, and the Probate Act does not provide any independent means to determine parentage. *Murray* is consistent with our supreme court's holding in *Poole*, which directs us to the Parentage Act for guidance when the Probate Act is silent on an issue of parentage.

¶ 43    In *Jotham*, the Minnesota Supreme Court also entertained a challenge to parentage during probate. The pertinent issue before the court was whether the three-year limitations period under the Minnesota Parentage Act applied in a probate proceeding where a party was attempting to rebut a presumption of parentage for intestacy purposes. *Jotham*, 722 N.W.2d at 452. The court held that the limitations period under the Minnesota Parentage Act applied. *Id.* at 453-54. The court reasoned that, when a party benefits from a presumption of paternity under the Minnesota Parentage Act and relies on that presumption in a probate proceeding, the Parentage Act must apply in its entirety. *Id.* at 452. The court distinguished between individuals seeking to establish paternity and those contesting the paternity of another. *Id.* at 453. The Minnesota Parentage Act's limitations periods for actions to declare the nonexistence of a presumed parent-child relationship were shorter than those for actions to declare such an existence, and this evinced "a policy favoring the establishment of parent-child relationships." *Id.* This policy bolstered the court's conclusion that paternity must be determined in accordance with the Minnesota Parentage Act. *Id.* at 453-54. Similarly, here, Joanna benefits from the presumption of paternity under the Parentage Act, and she faced a petition to declare the nonexistence of her parent-child relationship with Christopher. Like the statute in Minnesota, the Parentage Act imposes stricter limitations on challenges to an existing parent-child relationship than on actions to establish parentage. Compare 750 ILCS 46/607 (West Supp. 2015) (providing no limitation on a proceeding to adjudicate parentage of a child without any presumed, acknowledged, or adjudicated parent), with 750 ILCS 46/608(b) (West Supp. 2015) (limiting who may seek to declare the nonexistence of a presumed parent-child relationship and requiring findings by the court before the proceeding may commence) and

750 ILCS 46/205(b) (West Supp. 2015) (limiting when the child, birth mother, or presumed parent may bring an action to declare the nonexistence of a parent-child relationship).

¶ 44 Accordingly, our conclusion that the Parentage Act applies is consistent with Joanna's persuasive case law, with *Poole*, and with the plain language of the Parentage Act. The applicable limitations periods include the time during which a presumed parent may rebut the presumption of parentage (750 ILCS 46/205(b) (West Supp. 2015)) and the time during which certain persons may maintain a proceeding to adjudicate parentage (750 ILCS 46/602, 607, 608, 609 (West Supp. 2015)). Whether the Parentage Act's limitations periods bar Boguslaw's petition is entangled with the issue of standing, which we address *infra*.

¶ 45 Finally, we reject Boguslaw's argument that our interpretation leads to the absurd result of determining heirship before the decedent's death. Although living persons have children, living persons have no heirs. *Dempsey v. Dempsey*, 342 Ill. App. 3d 969, 974 (2003). Heirship can be determined only after death, and a child, presumed or otherwise, must survive the decedent in order to be an heir. See *Morris v. William L. Dawson Nursing Center, Inc.*, 187 Ill. 2d 494, 497-98 (1999) (under the Probate Act, "the estate of a decedent leaving no surviving spouse but who is survived by descendants is distributed among those descendants *per stirpes*").

¶ 46 B. Second Question: Standing

¶ 47 Boguslaw argues that he, as the administrator of Christopher's estate, has standing to maintain an action to adjudicate the nonexistence of a parent-child relationship between Christopher and Joanna. He argues that, because he has standing to petition the court to determine heirship, he concomitantly has standing to challenge parentage. He cites *Kaull v. Kaull*, 2014 IL App (2d) 130175, to argue that he specifically has standing to pursue DNA testing. In *Kaull*, the respondent refused to submit a DNA sample that the trial court ordered pursuant to Illinois Supreme Court Rule 215 (eff. Mar. 28, 2011). *Kaull*, 2014 IL App (2d) 130175, ¶ 1. The DNA sample was ordered in an effort to identify beneficiaries of a trust. *Id.* The respondent argued, in part, that Rule 215 was unconstitutional and that the Parentage Act controlled to the exclusion of Rule 215. *Id.* We held that the respondent forfeited his Parentage Act argument and that, regardless, if the Parentage Act conflicted with the supreme court rule over who may be ordered to submit to a DNA test in a trust case to determine beneficiaries, the supreme court rule controlled. *Id.* ¶¶ 76, 94. Accordingly, we affirmed the trial court's order for a DNA test. *Id.* ¶ 94.

¶ 48 Joanna responds that, although Boguslaw insists that he is merely determining heirship, he is in fact attempting to override the presumption of parentage established under the Parentage Act. She argues that he cannot circumvent the Parentage Act, which explicitly states that, "[i]n a civil action not brought under this Act, the provisions of this Act shall apply if parentage is at issue." 750 ILCS 46/603 (West Supp. 2015). She continues that Boguslaw's standing is limited by section 205(a), which enumerates those individuals who may challenge the presumption of parentage. 750 ILCS 46/205(a) (West Supp. 2015). Under the plain language of section 205(a), only three people have standing to challenge parentage in this case: Joanna, as the child; Ilona, as the birth mother; and Christopher, as the presumed parent. She argues that, because Boguslaw is not one of those individuals, he cannot challenge parentage. She continues that nothing in the Parentage Act prohibits its application in a probate proceeding, and, in fact, certain provisions suggest its application. See 750 ILCS 46/604 (West Supp. 2015) (if the

presumed father is deceased, venue for a proceeding to adjudicate parentage is appropriate in any county in which a proceeding for probate or administration of the presumed father's estate is or could be commenced).

¶ 49    Joanna continues that, although Boguslaw failed to present "maybe his best argument for standing" pursuant to section 602 of the Parentage Act, such an argument still falls short. Although Boguslaw could argue that he has standing pursuant to section 602(j) (750 ILCS 46/602(j) (West Supp. 2015)), standing under section 602 is limited by section 608 (750 ILCS 46/608 (West Supp. 2015)). Specifically, Joanna argues that section 608(b) strictly limits who may maintain a proceeding to declare the nonexistence of a parent-child relationship between a child and the child's presumed father. She argues that the only person who could commence such a proceeding was Christopher.

¶ 50    We agree with Joanna insofar as Boguslaw conflates a determination of heirship with an effort to declare the nonexistence of a parent-child relationship. We reject Boguslaw's repeated attempts to frame the proceeding as simply a determination of heirship—his petition for heirship turns on his argument that Christopher was not Joanna's father, and his argument improperly elevates form over substance. We also reject Boguslaw's argument that he has standing simply by virtue of his appointment as administrator under the Probate Act. We have already concluded that the Parentage Act's limitations apply, and these include section 602's standing provisions. Furthermore, we find *Kaull* inapplicable. *Kaull* addressed the context of trust administration, not the Probate Act; it considered the application of a supreme court rule that is not raised here; and, importantly, DNA testing was sought not to declare the nonexistence of a parent-child relationship, but instead to determine whether another person also had a parent-child relationship with the father. *Kaull*, 2014 IL App (2d) 1301475, ¶¶ 3-20.

¶ 51    Nevertheless, we do not believe that the provisions of the Parentage Act provide a simple yes or no answer to the second certified question. Rather, as we explain, standing is contingent upon findings that the trial court in this case has not yet made.

¶ 52    First, Boguslaw's standing as the administrator of the estate must derive from section 602(j) of the Parentage Act (750 ILCS 46/602(j) (West Supp. 2015)). Section 602(j) permits a proceeding to be maintained by "a representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, incapacitated, or a minor." *Id.* In other words, section 602(j) puts a legal representative in the shoes of a person who could seek to adjudicate parentage but for being deceased, incapacitated, or a minor. Pursuant to section 602(d), "a man presumed or alleging himself to be the parent of the child" also has standing. 750 ILCS 46/602(d) (West Supp. 2015). Therefore, the administrator of an estate (Boguslaw) has standing if the presumed father (Christopher) could maintain a proceeding, absent his death.

¶ 53    Whether a presumed father may challenge parentage is limited by several Parentage Act provisions. Although section 205(a) permits a presumed father to file an action to declare the nonexistence of the parent-child relationship (750 ILCS 46/205(a) (West Supp. 2015)), the action may not be filed after the child reaches age 18 (750 ILCS 46/205(b) (West Supp. 2015)). Absent a more specific provision, section 205 would bar an action by Christopher—and therefore also bar an action by Boguslaw—to declare the nonexistence of the parent-child relationship, as Joanna is past the age of 18.

¶ 54    On the other hand, section 608(b) applies only to a presumed parent. 750 ILCS 46/608(b) (West Supp. 2015) (a proceeding to declare the nonexistence of a parent-child relationship

- 13 -

"may be maintained *** by a person described in paragraph (1) through (4) of subsection (a) of Section 204 of this Act"). Section 608(b) permits an action to declare the nonexistence of the parent-child relationship between a child and the child's presumed father "at any time," but only after the court determines that "the presumed father and the mother of the child neither cohabitated nor engaged in sexual intercourse with each other during the probable time of conception." *Id.* An adjudication permitted under section 608(b) serves as a rebuttal of presumed parentage. 750 ILCS 46/608(c) (West Supp. 2015). By its plain language, section 608(b) permits a presumed parent to maintain an action to declare the nonexistence of the parent-child relationship outside of the limitations period of section 205, contingent upon a finding that the presumed father and the child's mother did not cohabitate and did not have sex with each other around the time the child was conceived.

¶ 55    Joanna urges a strict interpretation of section 608(b). She contends that, although section 608(b) carves out a "safe harbor for presumed parents to challenge parentage at any time," it allows only the presumed parent to maintain the proceeding—not the child, not the child's mother, and not the administrator of the deceased presumed parent's estate. Rather, she argues, the limitations period of section 205 still applies to anyone except the presumed father himself.

¶ 56    We are not persuaded by her argument, in light of section 602(j) (750 ILCS 46/602(j) (West Supp. 2015)). As discussed *supra*, the administrator of an estate, as the deceased's legal representative, stands in the deceased's shoes. The administrator's standing is contingent upon whether the presumed father, if not deceased (or incapacitated or a minor), could maintain a proceeding. Here, Christopher's standing to maintain a proceeding to declare the nonexistence of the parent-child relationship outside of section 205's limitations period is contingent upon satisfaction of section 608(b). In order for Boguslaw to have standing, the court must first find that Christopher and Ilona did not cohabitate and did not engage in sexual intercourse around the probable time of Joanna's conception. 750 ILCS 46/608(b) (West Supp. 2015). Absent that finding, section 608(b) is inapplicable, and Boguslaw's challenge to the presumed parent-child relationship is time-barred pursuant to section 205.

¶ 57    Accordingly, we cannot provide a general answer to the second certified question. Standing under the Parentage Act will turn on the facts of the particular case. Therefore, we decline to answer the second question.

¶ 58                                III. CONCLUSION

¶ 59    We answer the first certified question by concluding that the Parentage Act's limitations periods apply in a probate proceeding where parentage is challenged. We do not answer the second question, because standing depends upon a section 608(b) finding. We therefore reverse the underlying order and remand to the Du Page County circuit court for further proceedings consistent with this opinion.

¶ 60    First certified question answered; second certified question not answered; order reversed and cause remanded.

- 14 -